UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL S.,

        Plaintiff,

    v.                                              **DECISION AND ORDER**

                                                                    19-CV-928S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

        1.       Plaintiff Michael S.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his applications for supplemental security income and disability insurance benefits under Titles II and XVI of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.       Plaintiff protectively filed his applications with the Social Security Administration on March 14, 2016. Plaintiff alleged disability beginning September 20, 2014, due to cervical disc disease; status post-cerebral arterial aneurysm with March 2017 clipping; a depressive disorder; an anxiety disorder; a history of alcohol dependence. Plaintiff's applications were denied, and he thereafter requested a hearing before an administrative law judge ("ALJ").

        3.       On June 18, 2018, ALJ William Weir held an in-person hearing at which Plaintiff—represented by counsel—and Vocational Expert Eric Dennison appeared and

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

testified.  (R.[2] at 34-77, 16.)  At the time of the hearing, Plaintiff was 50 years old (R. at 27).  He has a high school education and last worked as a landscaper, laborer, and shipping clerk.  The ALJ later found that Plaintiff was unable to perform this past relevant work and had no substantial gainful activity since the September 20, 2014, onset date (R. at 27, 18).

4.      The ALJ considered the case *de novo* and, on September 5, 2018, issued a written decision denying Plaintiff's applications for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, he filed the current action, challenging the Commissioner's final decision.[3]  (Docket No. 1.)

5.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 5, 6.)  Plaintiff filed a response on February 27, 2020 (Docket No. 7), at which time this Court took the motions under advisement without oral argument.  For the reasons that follow, Plaintiff's motion is **granted**, and Defendant's motion is **denied**.

6.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a

---

[2]Citations to the underlying administrative record are designated as "R."

[3]The ALJ's September 5, 2018, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 389, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

3

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 20, 2014. (R. at 18.) At step two, the ALJ found that Plaintiff has the following severe impairment: cervical disc disease; status post-cerebral arterial aneurysm with March 2017 clipping; a depressive disorder; an anxiety disorder; a history of alcohol dependence. Id. at 19. Among other impairments, Plaintiff claimed his headaches were severe but the ALJ did not consider these headaches to be severe because of insufficient documentation to show the condition rose to level of severe impairment (R. at 19). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id.

12. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, capable of lifting and/or carrying twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. Additionally, the ALJ found that Plaintiff could engage in simple, repetitive, one or two-step tasks. Plaintiff must avoid complex work, defined as work involving multiple simultaneous goals or objectives, or the need to independently set quantity, quality, or methods standards. The ALJ also could engage in occasional social contact with co-workers, supervisors, and the public. (R. at 22.)

13. At step four, the ALJ found Plaintiff is unable to perform any past relevant work. (R. at 27.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 28.) The vocational

expert opined that a hypothetical claimant with similar age, education, and employment record and skills could perform such light exertion work as a bagger or machine feeder (R. at 28). Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 28, 29.)

14.   Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ failed to support the physical RFC finding with substantial evidence (Docket No. 5, Pl. Memo. at 1, 21-23). Plaintiff faults the ALJ for rejecting the functional limitations included in the opinion of Department of Veterans Affairs psychologist, Stephen Skiffington, Ph.D., despite giving significant weight to portions of Dr. Skiffington's opinion that did not show marked or severe limitations and specific functional opinions (id. at 25-26). Plaintiff also argues that the ALJ erred at Step Two of the analysis in failing to find Plaintiff's headaches were severe impairments (id. at 26-27; see R. at 19). For the reasons that follow, this Court adopts Plaintiff's argument on the ALJ's consideration of his headaches.

15.   This Court first considers the Step Two analysis and the finding that Plaintiff's headaches were not severe impairments. Defendant argues that substantial evidence supports the ALJ's finding (Docket No. 6, Def. Memo. at 5-9).

16.   As for impairments consideration at Step Two, Plaintiff bears the burden of establishing that he or she has a severe impairment, "which is 'any impairment or combination of impairments which significantly limits [the claimant's] ability to do basic work,'" Miller v. Berryhill, No. 16CV6467, 2017 U.S. Dist. LEXIS 153578, at *20 (W.D.N.Y. Sept. 20, 2017) (Telesca, J.); see 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments found to be "not severe" when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would

have no more than a minimal effect on an individual's ability to work, SSR 85-28, 1985 SSR LEXIS 19 (1985).  In this Circuit, this Step Two severity analysis "may do no more than screen out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995) (Docket No. 5, Pl. Memo. at 26).  Despite this level of screening at Step Two, Plaintiff still has the burden to show that their impairments or combination of impairments significantly limited his or her ability to perform work.

  17. Plaintiff contends that he long suffered from headaches (id. at 26-27, citing R. at 557 (March 10, 2016), 653 (April 12, 2016, reporting extraordinary headache in October 2015), 1004-05 (Sept. 4, 2016, diagnosed with migraine, complained of headaches over past 10 years, with increasing severity over past two to three years), 636 (March 13, 2017, complains acute headache three times a day), 617 (April 10, 2017, occasional headaches), 888-89 (June 17, 2017, claims to suffer from headaches "related to even the most simple exertion," R. at 888), 875 (June 28, 2017, since surgery complains of being scatterbrained and having frequent headaches), 626 (July 26, 2017, continued headaches).

  18. Plaintiff later complained of his headaches in his testimony before the ALJ (R. at 44-47).

  19. The Veterans Administration assessment of September 2016 did conclude that Plaintiff's headaches did not impair his ability to work (R. at 1006; see Docket No. 6, Def. Memo. at 8).

  20. Defendant responds that Plaintiff has not shown that his headaches caused more than minimal limitations, giving as an example the April 2016 disability report, which did not list headaches as a condition limiting his work (Docket No. 6, Def. Memo. at 6; R.

at 206). But Plaintiff in March 2016 complained of headaches which the doctor attributed to a lump in his right occipital area that, when pressed, could reproduce the headaches (R. at 557). The April 2016 disability report listed a cyst on obsibical nerve as a physical condition that limited Plaintiff's ability to work (R. at 206). Defendant points out the omission of the word "headaches," but the April 2016 report lists the possible cause of Plaintiff's headaches.

21. Review of the evidence indicates that Plaintiff met the de minimis standard for Step Two for headaches to be deemed a severe impairment. Whether Plaintiff ultimately prevails in establishing disability due to his headaches is unclear. The ALJ stated he considered the limiting effects of his impairments, even those not deemed to be severe, in the subsequent steps (R. at 19). The hypotheticals posed to the vocational expert, however, did not reference headaches or the need for time off due to headaches (cf. R. at 72-76).

22. This case is remanded for the ALJ to reconsider the Step Two analysis and to incorporate headaches in the subsequent steps of the analysis. Plaintiff's Motion for Judgment on the Pleadings (Docket No. 5) is granted on this ground.

23. Given that it is unclear whether Plaintiff's headaches were considered as a nonsevere impairment in the subsequent steps of the disability analysis, this Court need not comment on Plaintiff's other objections to the ALJ's decision.

24. This Court next considers whether the physical RFC is supported by substantial evidence, as claimed by Defendant (Docket No. 6, Def. Memo. at 9-15). Plaintiff argues that the ALJ relied upon his lay judgment in forming the RFC (Docket No. 5, Pl. Memo. at 21-23).

25. On remand, Plaintiff's physical condition should be reconsidered because Plaintiff status post cerebral aneurysm (deemed severe but not meeting a listed impairment) could be related to Plaintiff's headaches (both before and after surgery).

26. Again, upon remand, the ALJ also may reexamine the findings for mental aspects of the RFC, especially considering the opinion of Dr. Skiffington (R. at 1657-78; see Docket No. 5, Pl. Memo. at 23-29).

27. Dr. Skiffington noted in a mental residual functional capacity questionnaire in May 2018 that Plaintiff had slight or mild impairments in several mental abilities needed to perform unskilled work (R. at 1675-77).  He observed that Plaintiff had moderate impairments for maintaining regular attendance, an ordinary routine, and completing an ordinary workday without interruption from psychologically based symptoms, but mild to moderate impairment for getting along with co-workers, interacting with the public, and maintaining socially appropriate behavior (R. at 1675-78; see Docket No. 5, Pl. Memo. at 24).  Dr. Skiffington opined that Plaintiff's impairment or treatment would cause him to be absent more than four days per month (R. at 1678; Docket No. 5, Pl. Memo. at 24).  The doctor then concluded that Plaintiff "is unemployed and he is rated as being unemployable by the VA.  I consider the patient to be unable to get and maintain gainful employment" (R. at 1678).

28. The ALJ adopted Dr. Skiffington's opinions about the lower severity of Plaintiff's limitations (R. at 26) while giving no weight to the opinion because it was internally inconsistent and that it reached the ultimate question of disability (R. at 25-26).

29. The ALJ correctly discounted Dr. Skiffington's opinion on the ultimate question of disability (R. at 1678, 25-26).  Social Security regulations exclude the opinion

9

of other federal agencies on the ultimate determination of disability, 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

30. Defendant argues that having "moderate limitations in work-related functioning is compatible with the ability to perform the basic mental demands of unskilled work" (Docket No. 6, Def. Memo. at 16, citing Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010)).

31. As for the internal consistency of Dr. Skiffington's opinions, remand ordered here would provide an opportunity for the ALJ to consider the consistency of the doctor's opinions.

32. Therefore, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 5) is granted on the Step Two analysis of his headaches and consideration of that impairment through the subsequent steps of the disability analysis. As noted throughout this Decision and Order, the ALJ may reconsider other aspects of the decision that Plaintiff now objects to.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 5) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 6) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:  August 12, 2021
        Buffalo, New York

                                          <u>s/William M. Skretny</u>
                                          WILLIAM M. SKRETNY
                                          United States District Judge